989 P.2d 264

James L. NIELSEN, Plaintiff–Appellant,

v.

AMERICAN HONDA MOTOR CO., INC. and Klein Honda, Defendants–Appellees, and Jeffrey M. Gage, John Does 1–5, Jane Does 1–5, Doe Corporations 1–5, Doe Partnerships 1–5, Non–Profit Organizations 1–5, and Doe Governmental Agencies 1–5, Defendants.

No. 22189.

Intermediate Court of Appeals of Hawai'i.

Sept. 30, 1999.

Certiorari Dismissed Dec. 10, 1999.

Scot S. Brower, Honolulu, on the briefs, for plaintiff-appellant.

Kenneth K. Fukunaga and Lois H. Yamaguchi (Fukunaga Matayoshi Hershey & Ching), Honolulu, on the briefs, for defendants-appellees.

BURNS, C.J., WATANABE, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that Defendants–Appellees American Honda Motor Co., Inc. (Honda) and Klein Honda (Klein), admitted sales distributors of a 1993 vehicle, were not entitled to summary judgment because they failed to prove that the air bag system in the vehicle properly operated under the facts of the accident involved, viewing such facts in a light most favorable to the non-moving party. We further hold that, on the other hand, Plaintiff–Appellant James L. Nielsen (Plaintiff) raised genuine issues for trial based on his lay opinion that the bag improperly failed to deploy during a collision occurring when the vehicle was traveling at least thirty miles per hour, and also, that Plaintiff was qualified on the basis of the matters set forth in his opposing affidavit to render an expert opinion that the air bag system was defective. Because the first circuit court (the court) decided to the contrary, we vacate the order granting Honda and Klein's motion for summary judgment and the judgment entered in favor of Defendants.

## I.

### A.

On January 9, 1998, Plaintiff filed a complaint for damages against Defendant Jeffrey M. Gage (Gage),[1] Honda, and Klein (Honda and Klein are collectively referred to herein as Defendants). The complaint sought, *inter alia,* recovery of personal injury damages that Plaintiff incurred in an automobile collision with Gage. At the time of the collision, Plaintiff was driving a 1993 vehicle model Honda Accord SE, allegedly designed and manufactured by Honda[2] and sold or distributed by Klein. Plaintiff claimed he was injured because the air bag failed to inflate.

According to the complaint, Honda was "negligent in failing to warn of the danger in the use of the car and/or in it's [sic] design and/or manufacture of the car"; Klein was "negligent in failing to warn of the danger in the use of the vehicle"; Honda and Klein were strictly liable for selling a vehicle which was "defective and dangerous to the user and consumer in that it's [sic] air bag failed to inflate as it should have on impact"; "breached their implied warranty of merchantability by selling the car that was unfit, ... defective, and unsafe"; "breached their implied warranty of fitness for the particular purpose of driving or operating the car"; and "breached their express warranties regarding the vehicle."

### B.

On June 19, 1998, Honda and Klein moved for summary judgment, claiming that there was no defect in the subject vehicle, and therefore, no genuine issue of material fact for trial. Honda and Klein represented that an inspection of the vehicle by Scott Neal (Neal), their expert witness, failed to reveal

---

1. Defendant Jeffrey M. Gage is not a party to this appeal.

2. In its amended answer to the complaint, Defendant–Appellee American Honda Motor Co., Inc.

(Honda) admitted only to being "a merchant in the distribution of Honda automobiles in the United States."

any defect in the Supplemental Restraint System (SRS), commonly referred to as the air bag system.

In his affidavit, Neal set forth his qualifications as an expert on the Honda air bag system. In performance of his assignment, Neal stated that he made a visual inspection of the vehicle and examined pre-repair photographs of the vehicle. Neal opined that the damage to the car was the result of a minor front end collision and was of an "insufficient magnitude and duration to cause the air bag to deploy."

According to Neal, the subject driver side air bag "is controlled by sensors mounted under the dash of the occupant compartment" and the sensors "are designed to close and thereby cause deployment of the air bag in a frontal crash that generates a crash pulse of sufficient magnitude and duration to the passenger compartment[.]" Neal performed a "self-check" of the air bag system by following Honda's shop manual "troubleshooting" procedure. In that process, he used a digital voltmeter and found the "voltage readings" of the system "to be within specifications." He did not deploy the air bag. Neal concluded that the air bag system had "performed as designed and intended and [wa]s not defective" and that it met "all Honda specifications."

Further, Neal maintained the seat belt webbing and "D ring"[3] would contain marks caused "when a seat belt locks up in a collision of sufficient force to mark these items." Based on the lack of such marks, Neal was of the opinion that either Plaintiff was not wearing the seat belt or the accident was not serious.

Plaintiff filed a memorandum in opposition to the motion, arguing that genuine issues of material fact existed. In his attached affidavit, Plaintiff represented himself as an expert on air bag systems. Plaintiff stated he was "a professional licensed automobile mechanic for the past twenty years" and was certified by the "National Institute for Automotive Service Excellence." He listed his qualifications as follows:

*I have repaired, evaluated, tested, and worked on many Honda automobiles. I have training and job experience with the mechanics, operation, diagnosis, maintenance, and repair of automobile air bag systems. I am personally familiar with how air bag systems operate and function. I have knowledge of the design and performance characteristics of the 1993 Honda Accord SE air bag system.*

(Emphasis added.)

Plaintiff first asserted that Neal's evaluation did not include appropriate tests, such as an examination of the sensors and a clock spring in the steering wheel. Plaintiff maintained that "[i]f the clock spring is not set correctly, the air bag will not deploy, [and the self-check will not be able to detect this defect]."

According to Plaintiff, he had "reviewed the 1993 Honda Accord SE air bag specifications, which indicate[d] air bag deployment will occur "at [a] 30[-]mile[s-]per[-]hour impact." Plaintiff recounted that he was "personally familiar with the force of impact," and "[a]t the time of impact" his vehicle was "moving at least 30 miles per hour" when it struck "Gage's vehicle with such force" that Gage's vehicle "rolled ... on it's [sic] roof ... at least 50 feet." He opined that the air bag system should have deployed and was defective in failing to do so:

[I]t is customary for automobile mechanics to rely upon [the foregoing] information, or data, in rendering opinions regarding defects, and specification deficiencies of air bag systems, and in my opinion to a reasonable degree of automobile mechanic certainty, the 1993 Honda SE air bag system that is the subject of this action was defective, should have deployed, and did not meet Honda specifications, at the time of the accident that is the subject of this litigation.

Plaintiff also rested his conclusions on review of pre-repair photographs of the auto. Finally, Plaintiff declared he was wearing his seat belt at the time of the collision.

In Defendants' reply papers, Neal responded by claiming he had examined the

---

3. "D ring" is not defined in the affidavit.

sensors and found "no failure modes." Neal further asserted that there is no "clock spring" in the steering wheel but that Plaintiff was mistakenly referring to a "cable reel ... located in the steering wheel/column of the subject vehicle." According to Neal, electrical readings he had obtained of the cable reel "did not fall within the abnormal limit."

On August 26, 1998, the court granted Defendants' summary judgment motion, finding no genuine issues of material fact, and dismissed Plaintiff's claims against Honda and Klein. The court ruled that (1) Defendants had "sustained their initial burden of proof of showing an absence of the defect in the product (air bag) in the subject Honda automobile"; and (2) Plaintiff had "failed to respond with any admissible competent evidence." According to the court, Plaintiff's affidavit opposing summary judgment lacked "sufficient facts which establish[ed] that Plaintiff [wa]s competent to testify to the opinions and conclusions regarding the existence of a defect in the air bag[.]" Thus, the court ruled that Plaintiff's affidavit was insufficient to raise a genuine issue of material fact.

## II.

A summary judgment order is reviewed on appeal under the same standard applied by the trial court. *State v. Tradewinds Elec. Serv. and Contracting, Inc.,* 80 Hawai'i 218, 222, 908 P.2d 1204, 1208 (1995). Consequently, we must determine whether, viewing all the evidence in a light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party has clearly demonstrated that it is entitled to judgment as a matter of law. *Id.;* Hawai'i Rules of Civil Procedure Rule 56(c). In our view, there were genuine issues for trial and Defendants failed to demonstrate they were entitled to judgment.

## III.

Initially, we recognize that the use of expert testimony in summary judgment proceedings seems counter-intuitive. "After all, summary judgments are only proper when no factual disputes exist, and the stock-in-

trade of the expert witness is venturing opinions on the issues of fact." E. Brunet, *The Use and Misuse of Expert Testimony in Summary Judgment,* 22 U.C.Davis L.Rev. 93, 93 (1988) (hereinafter *The Use and Misuse of Expert Testimony* ). Indeed, "[t]he very presence of an expert implies that issues of fact exist." *Id.* However, "[c]ontemporary decisions allow experts to testify in generalized terms and often grant summary judgment for the movant on the basis of such testimony." E. Brunet, *Summary Judgment Materials,* 147 F.R.D. 647, 671 (1993). One rationale for this practice is rooted in the liberalized evidentiary rules allowing expert testimony. *The Use and Misuse of Expert Testimony, supra,* at 120–25. Another reason is that summary judgment may be used as a "docket clearing" device which tests the issues of a case and exposes frivolous claims. *Id.*

The use of expert affidavits has not been universally accepted; they have been excluded as being speculative and conclusory, and as lacking specific facts required for summary judgment. *Id.* at 101. Additionally, it may be argued that the participation of experts does not actually promote a docket clearing function. *Id.* at 127. When both parties employ expert testimony, the motion for summary judgment may be denied because of conflicting expert opinion. *Id.*

Nevertheless, this court has recognized that the "majority of jurisdictions allow expert affidavits at summary judgment[.]" *Wagatsuma v. Patch,* 10 Haw.App. 547, 559 n. 4, 879 P.2d 572, 581 n. 4, *cert. denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994). While the view that such affidavits should be scrutinized is sound, *The Use and Misuse of Expert Testimony, supra,* at 137, we consider our trial and appellate courts capable of sifting facts from opinion in an expert's affidavit and of determining the effect to be given such affidavits within the present framework for deciding summary judgment motions.

## IV.

In vacating the summary judgment order, we first point out that Defendants failed to establish the air bag system worked properly

under the circumstances asserted in Plaintiff's report of the accident.

## A.

■ Defendants sought to demonstrate that the air bag system was not defective because computer checks[4] indicated the system was fully functional. Neal explained the procedure he employed as follows:

> I turned on the ignition key and the red SRS light came on for 5 to 6 seconds and then went off. This is a [computer] self-check of the SRS and indicates it is in proper working condition. I then followed Honda's shop manual SRS trouble shooting procedure with a digital voltmeter and found the voltage readings to be within specifications, therefore indicating the SRS was fully functional.

But Neal's assertion that tests on the repaired vehicle failed to disclose any defect in the air bag system is hardly dispositive. As one court of appeals stated, "[O]ur judicial system has never accepted computers ... to decide ultimate issues in lieu of courts and juries."[5] *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 153, *reh'g over'd* (Tex.Ct.App. 1997).[6] It has been held that a sufficient test of the product must "replicate the exact ...

conditions to which the [product] had been subjected" in the subject incident.[7] *Perez–Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50, 54 (1st Cir.1998) (citing *Bogosian v. Mercedes–Benz of N.A., Inc.*, 104 F.3d 472, 480 (1st Cir.1997)).

Analogously, we believe that any expert opinion which is given conclusive effect on a motion for summary judgment must include a consideration of the conditions to which the product was subjected at the relevant time. Neal's minor collision opinion, as contrasted with Plaintiff's "at least" thirty miles per hour assertion, would arguably constitute a dispute on the conditions encountered by the vehicle.[8] If the nature of the conditions are disputed, we must view such evidence in a light most favorable to the non-moving party.

■ Viewing evidence of the impact speed in a light most favorable to Plaintiff, we do not discern any responsive facts in the record indicating that when operating properly, the air bag should not deploy when the impact speed is at least thirty miles per hour. Neal's affidavit fails to render any opinion that the air bag properly did not inflate under the circumstances of the collision described in Plaintiff's affidavit. Neal does not

---

4. We presume from the description of the testing by Scott Neal (Neal), the expert witness for Defendants–Appellees Honda and Klein Honda (Klein) (collectively, Defendants), and from similar reported court cases, that the self check was computer related.

5. Of course, the results of a computer check are "strong evidence if it is shown that the [computer self-check system] itself is functioning properly, but it is not irrefutable evidence that conclusively establishes a fact as a matter of law in the face of other contradictory evidence." *Sipes v. General Motors Corp.*, 946 S.W.2d 143, 153, *reh'g over'd* (Tex.Ct.App.1997).

6. The plaintiffs in *Sipes* were involved in an automobile accident and alleged the air bag in their vehicle failed to deploy. 946 S.W.2d at 146. They sued automobile manufacturer General Motors, the car dealership, and component part manufacturers of the vehicle's air bag, raising the claims of strict liability, negligent design, negligence, and breach of warranty under the state consumer protection statute. *Id.* The trial court granted defendants' motion for summary judgment. The court of appeals reversed in part and remanded the case, holding, *inter alia*, that genuine issues of material fact existed as to

"whether the impact was one in which the air bag ordinarily was designed to deploy." *Id.* at 158.

7. The plaintiff in *Perez–Trujillo v. Volvo Car Corp. (Sweden)*, 137 F.3d 50 (1st Cir.1998), sued the automobile manufacturer, alleging the air bag in his Volvo automobile deployed as he was driving, causing him to lose consciousness and collide into an oncoming car. *Id.* at 51. Plaintiff sued in strict product liability, and the trial court granted defendant Volvo's motion for summary judgment. *Id.* The appellate court reversed and remanded, holding, *inter alia*, that the plaintiff was not required to present expert testimony to overcome the motion for summary judgment. *Id.* at 56.

8. A third view of Neal's minor collision opinion is that it is too indefinite to raise a triable issue with respect to the statement of Plaintiff–Appellant James L. Nielsen (Plaintiff) as to the Honda's speed at impact. Of course, as indicated in the text, *supra*, crediting Neal's opinion as adequately challenging Plaintiff's thirty-miles-per-hour assertion would only raise an issue for trial on whether Plaintiff was traveling at that speed, and thus would not aid Defendants in obtaining summary judgment.

dispute Plaintiff's contention that the vehicle's own specifications call for deployment at a thirty-miles-per-hour impact or explain why, under such a circumstance, there was no deployment.

Because Defendants did not prove that the air bag functioned properly under the facts recited by Plaintiff, we are left with the conclusion that either there was a dispute as to the facts of the accident and/or Defendants failed to demonstrate that no defect existed. Therefore, it must be concluded Defendants did not sustain their burden of proving that the bag would not properly deploy under the facts of the accident, viewed in a light most favorable to Plaintiff.

### B.

Neal's opinion that the evidence indicated the collision was "insufficient" to cause deployment of the air bag was also inadequate summary judgment proof. Relying on the lack of marks on the seat belt and the damage revealed in the photographs, Neal opined "that the vehicle was in a frontal collision that was of *insufficient* magnitude and duration to cause the air bag to deploy." (Emphasis added.) He further declared that the air bag is designed to deploy "in a frontal crash that generates a crash pulse of *sufficient* magnitude and duration to the passenger compartment of the car." (Emphasis added.) These nebulous descriptions of the requisite magnitude and duration of a crash which would cause air bag deployment were grossly insufficient to meet Plaintiff's unchallenged contention that the vehicle specifications indicated deployment would take place upon impact at thirty miles per hour. Expert testimony must be more than "conclusionary statements." *Sipes*, 946 S.W.2d at 154.

### V.

Second, while we find the court acted conscientiously, we disagree with its evaluation of Plaintiff's affidavit. The court characterized Plaintiff's affidavit as follows:

Plaintiff's affidavit does not contain sufficient information regard [sic] his education, professional background and training; does not attest to the fact that he has worked on the Honda automobile air bag systems or worked on the air bag contained in the model of the Honda automobile involved in the accident; does not state that he examined the subject Honda automobile post-accident; and does not adequately describe how he reviewed, analyzed and reached the opinion and conclusion that the air bag in the subject Honda automobile was defective and should have deployed at the time of the accident.

### A.

■ The court's rejection of Plaintiff's affidavit was seemingly premised on its jaundiced view of his qualifications as an expert. While we believe the court erred in this regard, *see* discussion *infra*, we consider Plaintiff's affidavit as arguably sufficient to raise triable issues based on his lay opinion alone. Plaintiff's affidavit contained his personal observations to the effect that (1) the air bag failed to inflate (2) in a collision,[9] when (3) Plaintiff's vehicle was traveling at least thirty miles per hour at impact. According to him, the impact was substantial enough to cause (4) the other vehicle involved to roll onto its roof and to travel fifty feet, and (5) injuries to Plaintiff as a result of the collision. These facts are admissible and competent evidence because Plaintiff, as a person present, was an eyewitness to the accident and therefore had personal knowledge of the facts related.

Further, we believe that Plaintiff appropriately relied on specifications that represented the air bag would deploy in a thirty-miles-per-hour collision. Although Plaintiff failed to include the written specifications in his opposition papers, evidence in the vehicle's own specifications that the air bag should deploy in a thirty-miles-per-hour impact may have been admissible as either a party opponent or vicarious admission. Hawai'i Rules of Evidence (HRE) Rules 803(a)(1) and (2)

---

**9.** The photographs of the vehicle attached as exhibits to Defendants' motion for summary judgment indicate damage to the front of Plaintiff's vehicle. It is not disputed by Defendants that there was a "front end collision." *See* Neal's affidavit.

(1993).[10] In any event, Defendants do not, as we have pointed out, dispute Plaintiff's claim that the specifications established deployment was to occur in an impact of at least thirty miles per hour, but only dispute his estimate of the vehicle's speed. We may treat such an undisputed assertion as an implied admission by Defendants. *Cf. Tradewind Ins. Co. v. Stout,* 85 Hawai'i 177, 181, 938 P.2d 1196, 1200 (App.1997) (citing *Freitas v. City and County of Honolulu,* 58 Haw. 587, 588, 574 P.2d 529, 530 (1978) (holding that "the concurrence of the parties on the facts stated in the opposition memoranda brought these facts before the court as cross-admissions"); *Gonsalves v. First Ins. Co. of Hawaii, Ltd.,* 55 Haw. 155, 161, 516 P.2d 720, 724 (1973) (stating that "admissions in the brief of the party opposing the motion for summary judgment may be used in determining that there is no genuine issue of material fact, since they are functionally equivalent to admissions on file") (internal quotation marks and citation omitted)).

### B.

Defendants argue that Plaintiff's statements as to speed and distance are "mere guesswork." They maintain Plaintiff "failed to proffer competent evidence of the speed of travel of either of the vehicles involved in the collision, offering only self-serving 'estimates' that he was 'moving at least 30 miles per hour' and that 'Gage's car moved at least 50 feet.'"[11] This argument is flawed.

██ A lay person may render opinions as to speed and distance. Under HRE Rule 701 (1993), a lay witness may testify as to rate of speed, 1 J. Strong, *McCormick on Evidence* § 11, at 46 n. 22 (4th ed.1992); *Nationwide Mut. Ins. Co. v. Chantos,* 298 N.C. 246, 258 S.E.2d 334 (1979) ("[A] person of ordinary intelligence and experience is competent to state his [or her] opinion as to the speed of a vehicle when ... he [or she] has had a reasonable opportunity to observe the vehicle and judge its speed."), and distance, A. Bowman, *Hawai'i Rules of Evidence Manual* § 701–2, at 277 (1990); *State v. Sequin,* 73 Haw. 331, 343, 832 P.2d 269, 275–76 (1992) (holding that a witness's lay opinion based upon first-hand knowledge and perception which may have been helpful to the jury, was admissible); *State v. Ewing,* 81 Hawai'i 156, 165, 914 P.2d 549, 558 (1996) (holding that "the estimation of distance is a matter clearly within the permissible opinion of a lay witness"). Furthermore, "[l]ay witnesses [who were present] can testify about how the impact occurred." *Sipes,* 946 S.W.2d at 152.

Because Plaintiff's statements may be "estimates," or characterized by Defendants as "self-serving," does not render such testimony incompetent. The accuracy and weight to be accorded these statements are to be determined at trial, not on summary judgment. To treat them otherwise would constitute impermissible fact-finding at the summary judgment stage. *See Perez–Trujillo,* 137 F.3d at 54 (holding that under circumstances, dismissing eyewitness testimony as incredible would result in "impermissible factfinding") Aside from their general guesswork assertion, Defendants do not challenge Plaintiff's statements with contrary facts.

---

**10.** Hawai'i Rules of Evidence (HRE) Rule 803(a) (1993) states:

> **Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (a) Admissions.
> (1) Admission by party-opponent. *A statement that is offered against a party and is (A) the party's own statement,* in either the party's individual or a representative capacity, or (B) *a statement of which the party has manifested the party's adoption or belief in its truth.*
> (2) Vicarious admissions. A statement that is offered against a party and was uttered by

(A) *a person authorized by the party to make such a statement,* (B) *the party's agent* or servant *concerning a matter within the scope of the agent's* or servant's *agency* or employment, made during the existence of the relationship[.]

HRE Rules 803(a)(1) and (2) (emphases added).

**11.** Defendants point out that Plaintiff is not an accident reconstruction expert and did not retain such an expert. Nothing in the law requires, without more, that the opinion of an accident reconstruction expert is required to prove the circumstances of an accident. According to his affidavit, Plaintiff observed the accident, and thus, had personal knowledge of the events.

## C.

■ Based on the foregoing, Plaintiff's opinion as to the defective nature of the air bag was arguably admissible as lay witness opinion under HRE Rule 701. Pursuant to HRE Rule 701, a lay witness may testify as "to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." As noted above, Plaintiff witnessed the collision and reviewed the pertinent undisputed vehicle specifications. Thus, he was able to form a rational opinion based on his perception as to the defective nature of the air bag and this opinion plainly went to the determination of a material fact in issue. Such evidence was enough to deny Defendants summary judgment. *See Perez–Trujillo,* 137 F.3d at 55 (holding that presentation of expert testimony was not a requirement to surviving summary judgment, because a "[s]trict liability claimant may demonstrate an unsafe defect through direct eyewitness observation of a product malfunction, and need not adduce expert testimony to overcome a motion for summary judgment" ). A defendant's employee-expert therefore "does not necessarily trump a strict liability claimant's circumstantial non-'expert' evidence" at summary judgment. *Id.* In the instant case, Plaintiff's eyewitness testimony of the air bag's failure to deploy is not "trumped" by the expert testimony offered by Neal, and may be considered competent evidence of the air bag's defect for summary judgment purposes.

## VI.

## A.

■ Moreover, unlike the court, we regard Plaintiff's affidavit as qualifying him to testify as an expert witness. We grant that on appeals from trials, a trial court's determination of a witness's qualifications to testify as an expert is reviewed under an abuse of discretion standard. However, on appeal

from a summary judgment order, our review is de novo, and in reviewing a motion for summary judgment we are in the same position as the trial court. *GGS Co., Ltd. v. Masuda,* 82 Hawai'i 96, 104, 919 P.2d 1008, 1016 (App.1996); *see also Waikiki Malia Hotel v. Kinkai Properties, Ltd.,* 75 Haw. 370, 381, 862 P.2d 1048, 1056 (1993) ("The standard to be applied by the appellate court in reviewing a grant or denial of summary judgment is identical to that employed by the trial court."); *Pioneer Mill Co., Ltd. v. Dow,* 90 Hawai'i 289, 296, 978 P.2d 727, 733 (1999) ("On appeal, an award of summary judgment is reviewed under the same standard applied by the trial court."); *but see General Elec. Co. v. Joiner,* 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) ("[T]he question of admissibility of expert testimony is not such an issue of fact, and is reviewable [on appeal] under the abuse of discretion standard."). Thus, in reviewing the expert qualifications of a witness raised on summary judgment, we apply a de novo and not an abuse of discretion standard.

## B.

■ Whether an expert is qualified to give an opinion is governed by HRE Rule 702 (1993):

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by *knowledge, skill, experience, training, or education* may testify thereto in the form of an opinion or otherwise.

(Emphasis added.) As a result, a witness may qualify as an expert if he or she possesses a background in any one of the five areas listed under HRE Rule 702: knowledge, skill, experience, training, *or* education. 29 C. Wright & V. Gold, *Federal Practice and Procedure: Evidence* § 6263, at 191 (1997).[12]

■ Consequently, a witness should not be disqualified as an expert if summary judgment papers demonstrate a HRE Rule 702 basis for qualification; any purported defi-

---

12. We refer to authorities construing the Federal Rules of Evidence (FRE) because the HRE are patterned on those rules. *See State v. Ito,* 90 Hawai'i 225, 236 n. 7, 978 P.2d 191, 202 n. 7

(App.1999). HRE covering "admission of scientific and technical evidence are patterned after [FRE Rules] 702 and 703[.]" *Id.*

ciency in expertise should go to the weight of the witness's testimony at trial. "Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.* § 6265, at 251.

██ Contrary to the court's determination, we conclude Plaintiff's affidavit contained ample "information" regarding his "education, professional background, and training." Here, Plaintiff, under oath, stated he is a licensed professional automobile mechanic and has been employed as such for the past twenty years. In that capacity, he has "repaired, evaluated, tested, and worked on many Honda automobiles." He has had "training and job experience with the mechanics, operation, diagnosis, maintenance, and repair of automobile air bag systems." By knowledge, skill, experience, and training, Plaintiff appears to have satisfied more than the minimal requirements to testify as an expert.

██ Our supreme court has admonished that "[i]t is not necessary that the expert witness have the highest possible qualifications to testify about a particular matter[.]" *Larsen v. State Savings and Loan Ass'n,* 64 Haw. 302, 304, 640 P.2d 286, 288 (1982). "Once the basic requisite qualifications are established, the extent of an expert's knowledge of the subject matter goes to the weight rather than the admissibility of the testimony." *Id.* Exclusion of admissible expert testimony thus is disfavored. *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 799, (4th Cir.1989), *cert. denied,* 493 U.S. 1073, 110 S.Ct. 1120, 107 L.Ed.2d 1027 (1990) ("Generally, the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training, nor education[.]"). Here, Plaintiff established in his affidavit a basis in four of the five areas of expertise identified under HRE Rule 702 as conferring expert status.

## C.

As to the remaining objections which were raised by the court, Plaintiff relates that he has had "training and job experience" on air bag systems and "as an automobile mechanic ... [is] personally familiar with how air bag systems operate and function." Plaintiff maintains that he has "knowledge of the design and performance characteristics of the 1993 Honda Accord SE air bag system." In light of his specific and general knowledge and his experience with air bag systems, we regard any hesitation by the court as to whether Plaintiff has "worked on the Honda automobile air bag systems or ... [that] contained in the model ... involved in the accident," as going to the weight and not the admissibility of his expert opinion.

We regard Plaintiff's lack of post-accident inspection of the automobile as of little significance in view of his involvement in the accident. Finally, we find no infirmity in Plaintiff's affidavit "adequately describ[ing]" how he reached his opinion, as did the court; Plaintiff's affidavit plainly sets out the syllogism that the Honda specifications call for air bag inflation at a thirty-miles-per-hour impact, at the least such an impact occurred, the bag did not inflate, and therefore the system was defective.

## VII.

We conclude that summary judgment must be denied with respect to each of Plaintiff's claims.

## A.

██ We observe that Defendants' contention that the air bag system was working properly did not challenge all of Plaintiff's claims. Such a defense did not absolve Defendants of design liability, which holds a defendant liable when the design of a product—the way a product was intended to function—is itself negligent or defective. According to the Hawai'i Supreme Court,

> [w]here the defendant is the moving party, there is no genuine issue as to any material fact and the defendant is entitled to a judgment as a matter of law if, upon viewing the record in light most favorable to the plaintiff, it is clear that the plaintiff would not be entitled to recover under any discernable theory.

*Abraham v. Onorato Garages,* 50 Haw. 628, 631–32, 446 P.2d 821, 825 (1968).

In the instant case, the complaint alleges, *inter alia,* negligent design of the vehicle. Because negligent design was a discernable theory of recovery, it was improper for the court to have granted Defendants' motion as to all of Plaintiff's claims.[13]

### B.

With respect to Plaintiff's strict product liability claims, Defendants' motion must be denied. Plaintiff's burden in a strict product liability claim is to prove "(1) a defect in the product which rendered it unreasonably dangerous for its intended or reasonably foreseeable use; and (2) a causal connection between the defect and Plaintiff's injury."[14] *Wagatsuma,* 10 Haw.App. at 566, 879 P.2d at 583–84, (citing *Ontai,* 66 Haw. at 243, 659 P.2d at 740). In a summary judgment motion, "[c]ounter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue." *GECC Fin. Corp. v. Jaffarian,* 79 Hawai'i 516, 522, 904 P.2d 530, 536 (App.), *modified,* 80 Hawai'i 118, 905 P.2d 624 (1995). As mentioned above, Plaintiff raised a genuine issue of fact as to whether the air bag should have deployed.

### C.

With respect to Plaintiff's negligence claims, Defendants' motion must be denied. Under any of his negligence theories, Plaintiff has the burden of proving (1) duty to conform to a certain standard of conduct, (2) breach of the duty, (3) causal connection between the breach and the injury, and (4) damage to another. *See Tseu ex rel. Hobbs v. Jeyte,* 88 Hawai'i 85, 91, 962 P.2d 344, 350, *reconsideration denied,* 91 Hawai'i 124, 980 P.2d 998 (1998) (citing *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987)). On summary judgment, Defendants failed to assert that they did not owe Plaintiff a duty, they did not cause Plaintiff's damages, and Plaintiff did not suffer any damages. Only the element of breach was contested by Defendants' claim of no defect. As mentioned above, Plaintiff raised a genuine issue of fact as to whether the air bag should have deployed.

### D.

With respect to Plaintiff's warranty claims, Defendants' motion for summary judgment must be denied. In a breach of implied warranty of merchantability claim, Plaintiff must show (1) the seller is a merchant of such goods, and (2) the product was defective or unfit for the ordinary purpose for which it is used. Hawai'i Revised Statute (HRS) § 490:2–314 (1993); *Torres v. Northwest Eng'g Co.,* 86 Hawai'i 383, 401, 949 P.2d 1004, 1022 (App.1997); *Ontai,* 66 Haw. at 249–50, 659 P.2d at 744; *see also Larsen v. Pacesetter Sys., Inc.,* 74 Haw. 1, 22, 837 P.2d 1273, 1284–85 (1992) ("[T]o bring an action in implied warranty for personal injury[,] a plaintiff is required to show product unmerchantability sufficient to avoid summary judgment on the issue of defectiveness in a tort strict products liability suit.") In a breach of express warranty claim, Plaintiff must prove that (1) Defendants made an affirmation of fact or promise regarding the

---

**13.** Plaintiff also pled failure to warn of danger in the use of the vehicle. "A duty to warn of latent defects in a product arises under both negligence and strict liability theories." *Tabieros v. Clark Equip. Co.,* 85 Hawai'i 336, 370, 944 P.2d 1279, 1313 (1997). Thus, for purposes of summary judgment in this case, the duty to warn theories would be resolved in the same way as Plaintiff's strict product liability and negligence claims. *See infra* discussion in text.

**14.** We note that Plaintiff must also show the seller or distributor of the defective product is engaged in the business of selling or distributing such product. *Ontai v. Straub Clinic and Hospital, Inc.,* 66 Haw. 237, 242, 659 P.2d 734, 739

(1983); *Stewart v. Budget Rent–A–Car Corp.,* 52 Haw. 71, 75, 470 P.2d 240, 243 (1970); *Restatement (Third) of Torts* § 1 (1997). It was admitted by Honda that it is a California corporation qualified to do business in Hawai'i and a merchant in the distribution of Honda automobiles in the United States under Hawai'i Revised Statutes (HRS) § 490:2–104 (1993). It is also undisputed that Klein is a corporation or partnership or business entity in Everett, Washington, licensed to do business in Washington. Klein admits it is a merchant in the distribution of Honda automobiles in the United States under HRS § 490:2–104 and was the original distributor of the subject vehicle.

product, (2) that statement became part of the basis of the bargain, and (3) the product failed to perform according to the statement. HRS § 490:2–313 (1993); *Torres,* 86 Hawai'i at 391–94, 949 P.2d at 1012–15. In a breach of implied warranty for fitness of purpose claim, Plaintiff must prove that (1) Plaintiff desired a product for a particular purpose, (2) Defendants had reason to know about this purpose, and (3) the product sold to Plaintiff failed to meet that purpose. HRS § 490:2–315 (1993); *Torres,* 86 Hawai'i at 402, 949 P.2d at 1023; *Ontai,* 66 Haw. at 250–51, 659 P.2d at 744. Here, Defendants only challenged the last element of each of the foregoing theories by asserting a lack of defect. As mentioned above, Plaintiff raised a genuine issue of fact as to whether the air bag should have deployed.

## VIII.

For the foregoing reasons, we vacate the court's August 26, 1998 order granting Defendants' motion for summary judgment and the December 7, 1998 judgment entered thereon, and remand the case for further proceedings.